AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

FILED

NOV 1 4 2012

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

| United States of America | ) | |
| | ) | |
| v. | ) | Case No.  12-M- 2151 |
| | ) | |
| JAMES F. LAGONA | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about between <u>November 2, 2012, and November 3, 2012</u> in the county of <u>Erie</u> in the Western District of New York, the defendant violated <u>18</u> U.S.C. § <u>1503(a)</u>, an offense described as follows:

corruptly influencing, obstructing and impeding or endeavoring to influence, obstruct and impede the due administration of justice

This criminal complaint is based on these facts:

☐**XX**   Continued on the attached sheet.

_____
*Complainant's signature*

MARCELLO FALCONETTI
Special Agent, Federal Bureau of Investigation

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   <u>November 14, 2012</u>

_____
*Judge's signature*

HONORABLE HUGH B. SCOTT
United States Magistrate Judge

City and State:   <u>Buffalo, New York</u>

_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF ERIE        )   SS:
CITY OF BUFFALO      )

     I, **Marcello Falconetti,** having been first duly sworn, do hereby depose and state as follows:

     1.     Your affiant is a Special Agent of the Federal Bureau of Investigation (FBI) and has been so employed since August 1996. Your affiant is currently assigned to the FBI Safe Streets Task Force. Previously, your affiant was assigned to the White Collar and Public Corruption Unit. Your affiant swears this affidavit in support of a criminal complaint charging JAMES F. LAGONA ("LAGONA") with obstructing justice (due administration), in violation of Title 18, United States Code, Section 1503(a).

     2.     The facts in this affidavit come from your affiant's personal observations and review of records, including audio recordings and a draft transcript thereof, your affiant's training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of your affiant's knowledge about this matter.

     3.     On or about March 25, 2010, JAMES F. LAGONA was indicted in the United States District Court for the Western District of New York (WDNY) with 27 felony counts of mail fraud offenses, in violation of Title 18, United States Code, Sections 1341 and 1349, in case number 10-CR-90-S, arising from an investment fraud scheme. Following a jury trial, on or about February 23, 2011, LAGONA was found guilty of all 27 counts. On or about May 19, 2012, the presiding judge denied LAGONA's motion for judgment of acquittal. LAGONA is

scheduled to be sentenced on or about December 3, 2012. LAGONA is subject to a maximum penalty of 20 years' imprisonment for each of the 27 counts on which he was found guilty. Under the United States Sentencing Guidelines, he faces an advisory sentencing range of 210 to 262 months' imprisonment.

4.    The case against LAGONA was prosecuted by the United States Attorney's Office (USAO) of the WDNY, which is headed by United States Attorney William J. Hochul, Jr.  U.S. Attorney Hochul was confirmed to that post by the United States Senate on or about March 11, 2010, approximately two weeks before the date of the LAGONA indictment.  Prior to that, he served as an Assistant United States Attorney in the USAO-WDNY.

5.    Kathy Hochul is the United States Representative for a New York Congressional District within the WDNY.  Prior to serving as a Representative, from 2007 to 2011, Rep. Hochul was the publicly elected Clerk of Erie County.  U.S. Attorney Hochul and Rep. Hochul are spouses.  Rep. Hochul ran as a candidate for reelection to Congress in the recent federal election, which was held on Tuesday, November 6, 2012, against a single opponent, Christopher Collins.  Rep. Hochul was the nominee of the Democratic Party; Collins was the nominee of the Republican Party.  According to media reports published in the weeks leading up to the election, the election race between Rep. Hochul and Collins was close, with polls showing the race within the margin of error of available polling data.

6.    On or about November 2, 2012, LAGONA went to Rep. Hochul's campaign headquarters, within the WDNY, and asked to speak with a representative of Rep. Hochul's campaign concerning information he claimed could help Rep. Hochul's candidacy.  A campaign staffer for Rep. Hochul, hereinafter referred to as Campaign Staffer 1, agreed to meet with LAGONA and did so privately for approximately ten minutes.  During this meeting,

LAGONA stated to Campaign Staffer 1 that he was a Catholic Priest of the Western Rite Orthodox Church.  LAGONA claimed that he had been in discussions with a representative of the Republican Party, and that the Republican Party was interested in securing his appearance at a campaign rally or featuring him in a political advertisement targeted at religious voters; LAGONA suggested that the Republican Party wanted his help to convince religious voters to support Republican candidates, including Collins.  LAGONA told Campaign Staffer 1 that he had recently been convicted of felony offenses brought by the USAO-WDNY and that he was due to be sentenced in December 2012.  LAGONA claimed that he had been wrongfully prosecuted based on his religious stances and that witnesses had testified falsely against him. LAGONA further claimed that one of the witnesses who he alleged had testified falsely against him had subsequently obtained a job in the Erie County Clerk's Office.

7.      LAGONA suggested to Campaign Staffer 1 that the Republican Party was interested in using what had allegedly happened to LAGONA to demonstrate religious persecution and embarrass Rep. Hochul's campaign.  LAGONA told Campaign Staffer 1 that LAGONA would not participate in any advertisement or rally featuring this information or supporting the Republican Party, if U.S. Attorney Hochul and/or the USAO-WDNY dismissed the case against him or reduced his punishment.  LAGONA told Campaign Staffer 1 that he wanted a "mutually beneficial outcome" for himself and the Rep. Hochul campaign.

8.      Following the meeting described in paragraphs 6 and 7 above, after consulting with others, Campaign Staffer 1 contacted the FBI by telephone and made a report.

9.      Under the FBI's supervision, on or about November 2, 2012, Campaign Staffer 1 attempted to contact LAGONA by telephone to arrange a meeting, but LAGONA did not pick up the call.  Later that evening, LAGONA called Campaign Staffer 1 back.  Campaign

Staffer 1 told LAGONA that Campaign Staffer 1 needed to know exactly what to say to U.S. Attorney Hochul and suggested that they meet to discuss LAGONA's proposal. LAGONA repeated his offer not to cooperate with the Republican Party's alleged interest in utilizing LAGONA's claims about his alleged wrongful prosecution in the campaign, if U.S. Attorney Hochul and/or the USAO-WDNY dismissed the case against him. LAGONA stated that they needed to discuss the matter soon, because, LAGONA claimed, he had told the Republican Party that he would decide whether to cooperate with them by the next day. LAGONA and Campaign Staffer 1 agreed to meet the next day at Rep. Hochul's campaign office.

10.     On or about November 3, 2012, LAGONA met Campaign Staffer 1 at Rep. Hochul's campaign office, where they talked alone for approximately ten minutes. At the direction of the FBI, Campaign Staffer 1 covertly recorded the conversation between Campaign Staffer 1 and LAGONA. Campaign Staffer 1 told LAGONA that LAGONA needed to specify what the arrangement between LAGONA, U.S. Attorney Hochul, and Rep. Hochul's campaign would be. Campaign Staffer 1 also told LAGONA that Campaign Staffer 1 needed to know what to ask U.S. Attorney Hochul for if Campaign Staffer 1 were to speak to U.S. Attorney Hochul; Campaign Staffer 1 asked LAGONA what he wanted the "outcome [to] be." LAGONA stated that, "as you had said yesterday you know, you, you properly identified a quid pro quo, quid pro quo situation, in the case that had been brought against me and three defendants . . . ." LAGONA specified that he "would like the case against [him] dismissed" and a "situation where [the USAO-WDNY is] not going to bring any other charges of anything coming out of this." In exchange for this, LAGONA stated that he would provide Rep. Hochul the following:

     a.     LAGONA stated that "absolutely I would commit to not speaking with the Republican Party anymore."

     b.     LAGONA stated that he "would pull any of the people who [he] had . . . been able to organize for that, this rally that they're [(referring to the Republican Party and/or a conservative political action group that LAGONA had referenced)] talking about."

     c.     LAGONA stated that he would be "more than willing to, in my, in my capacity as a Clergyman make an appearance with [Rep. Hochul]," including wearing his clerical garb.

     d.     LAGONA stated that he could try to influence Catholic voters not inclined "to vote straight right-to-life" to support Rep. Hochul's campaign, rather than Collins's campaign.

     e.     LAGONA suggested that he could try to influence the six-percent of voters that public polling data indicated remained undecided about which candidate to support.

LAGONA then repeated to Campaign Staffer 1 that the Republican Party wanted to hear from him that night about whether he would assist the Republican Party as described in paragraphs 6, 7, and 9 above, implying that Campaign Staffer 1 needed to reach a decision quickly. After stating to Campaign Staffer 1 that he was unsure whether the USAO-WDNY could appear in court to dismiss the case that very day, LAGONA stated that he "would need some guarantee that we're going to be able to do that" – meaning, obtain dismissal of his case – before LAGONA would provide the assistance he proposed. Campaign Staffer 1 told LAGONA that Campaign Staffer 1 would "talk to someone," and LAGONA asked whether his proposal was "realistic." Campaign Staffer 1 stated that Campaign Staffer 1 did not know and that Campaign Staffer 1 would be in touch with LAGONA. The meeting ended.

11.     Following the meeting described in paragraph 10 above, LAGONA attempted to contact Campaign Staffer 1 by phone on more than one occasion leading up to the federal election.

12.     Your affiant's investigation has revealed no evidence that the Republican Party, Collins, or the Collins campaign in fact intended or ever considered using LAGONA to support Collins or any other candidate for office in the manner LAGONA alleged.  Your affiant's investigation also has revealed no evidence that Campaign Staffer 1, Rep. Hochul, or Rep. Hochul's campaign ever intended to accept or considered accepting LAGONA's proposal, or that the proposal was ever communicated to or considered by U.S. Attorney Hochul.  Further, your affiant's investigation also revealed no evidence that a witness obtained employment at the Erie County Clerk's Office after testifying falsely at LAGONA's trial, as LAGONA claimed to Campaign Staffer 1.  The evidence developed by your affiant's investigation is that LAGONA acted independent of the public officials and campaigns described herein, and further that the claims he made to Campaign Staffer 1 about his trial, the witnesses who testified at his trial, and his potential role in the election campaign were false.

13.     Based upon the foregoing information, your affiant respectfully submits that there is probable cause to believe that LAGONA did corruptly endeavor to influence, obstruct and impede the due administration of justice with respect to the criminal case in which he is due to be sentenced on December 3, 2012, 10-CR-90-S, pending in the WDNY, in violation of Title 18, United States Code, Section 1503(a).

14.    It is further respectfully requested that this Court issue an order sealing, until further order of this Court, this Affidavit, Complaint, and all documents in support of the application thereof.   Sealing is necessary, because public disclosure of the contents of this application may have a negative impact on the operational plan to execute the arrest warrant.


MARCELLO FALCONETTI
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before

me this 14th day of  November 2012.


HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE


7